BLANK ROME LLP
A Pennsylvania LLP
STEPHEN M. ORLOFSKY, ESQUIRE (SMO-6932)
New Jersey Resident Partner
J. LLEWELLYN MATHEWS, ESQUIRE (JLM-8508)
Woodland Falls Corporate Park
210 Lake Drive East, Suite 200
Cherry Hill, New Jersey 08002
(856) 779-3600
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| WALLACE R. BARR, on behalf of himself and and all others similarly situated, | : <br> : |
| | :    CIVIL ACTION NO. _____ |
| Plaintiff, | : <br> : |
| v. | :    CLASS ACTION COMPLAINT <br> :    DEMAND FOR JURY TRIAL <br> :    AND CERTIFICATIONS UNDER |
| HARRAH'S ENTERTAINMENT, INC. | :    L. Civ. R. 11.2 AND 201.1(d)(3) <br> : |
| Defendant. | : |

## CLASS ACTION COMPLAINT

Lead Plaintiff, Wallace R. Barr (*"Barr"* or *"Lead Plaintiff"*), residing at 1525 Venadero

Road, Pebble Beach, CA 95953, individually and on behalf of all other persons similarly

situated, by his undersigned attorneys, alleges the following upon personal knowledge as to

himself and his own acts, and based upon information and belief as to all other matters.

## NATURE OF ACTION AND SUMMARY OF ALLEGATIONS

1.      Lead Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of himself and all other persons who held options to purchase Caesars Entertainment, Inc. ("*Caesars*") common stock pursuant to Caesars' 1998 Stock Incentive Plan (the "*1998 Plan*"). On March 11, 2005, Caesars' stockholders approved the July 14, 2004 Agreement and Plan of Merger between Caesars, Harrah's Entertainment, Inc. ("*HET*") and Harrah's Operating Company (the "*Merger Agreement*").   On June 13, 2005, pursuant to the Merger Agreement, Caesars merged with and into Harrah's Operating Company, a wholly owned subsidiary of HET (the "*Merger*").   Pursuant to the Merger Agreement, HET assumed Caesars' obligations under the 1998 Plan.   Nevertheless, HET has refused to pay option holders under the 1998 Plan the price to which they were entitled as a result of the Merger under the unambiguous terms of the 1998 Plan.

2.      Pursuant to the "change in control" provision of the 1998 Plan, option holders under the 1998 Plan were entitled to receive for each option the highest share price paid for Caesars' common stock in connection with the Merger.   The highest price paid for a share of Caesars' common stock in connection with the Merger was $23.76 or 0.3247 of a share of HET common stock for each share of Caesars' stock.   Instead of complying with the clear and unambiguous terms of the 1998 Plan, HET refused to pay option holders the highest price of a share of Caesars' common stock paid in connection with the Merger.   Rather, HET paid option holders under the 1998 Plan a per share price that was substantially less.

3.      Lead Plaintiff, on behalf of himself and all other option holders under the 1998 Plan, seeks to recover the difference between the amount paid to option holders and the highest price paid for Caesars' common stock in connection with the Merger.

2

## JURISDICTION AND VENUE

4.       This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 as the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states. This Court has jurisdiction over the claims of all Class members pursuant to 28 U.S.C. § 1332(d) because the number of members of the Class exceeds 100 and the aggregate value of the claims of all Class members exceeds $5,000,000. This Court also has jurisdiction over all Class members pursuant to 28 U.S.C. § 1367 because Lead Plaintiff satisfies the amount in controversy requirements of 28 U.S.C. § 1332.

5.       Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) and (b) because the breach of contract complained of herein was part of a course of business dealings in this District that caused direct and foreseeable harm in this District and many of the acts charged herein occurred in substantial part in this District.

## PARTIES

6.       HET is a Delaware corporation with its principal place of business located at One Harrah's Court, Las Vegas, Nevada 89119. HET is a premier provider of branded casino entertainment throughout the world. HET owns or manages, through various subsidiaries, more than 40 casinos in three countries primarily under the Harrah's, Caesars and Horseshoe brand names.

7.       Mr. Barr is a citizen of the state of California with a principal residence located at 1525 Venadero Road, Pebble Beach, California 93953. Mr. Barr is a former officer and director of Caesars. From late 2002 until 2004, Mr. Barr served as a director and the president and chief executive officer of Caesars. Mr. Barr served as executive vice president and chief operating officer from July 10, 2001 until November 19, 2002. Mr. Barr served as executive vice president

3

and co-chief operating officer from January 2001 to July 2001 and executive vice president-

eastern region since December 31, 1998.

## CLASS ACTION ALLEGATIONS

8.      Lead Plaintiff brings this action as a class action pursuant to Federal Rules of

Civil Procedure 23(a) and (b)(1)(2)&(3). The "*Class*" is defined as:

> all persons who held options granted pursuant to the 1998 Plan to
> purchase Caesars' common stock and who exchanged their options
> as a result of the Merger, but who did not receive the equivalent of
> the highest price that was paid for the shares of Caesars' common
> stock in connection with the Merger. Excluded from the Class are
> HET, the officers and/or directors of HET, and members of their
> immediate families and their legal representatives, heirs,
> successors or assigns and any entity in which HET has or had a
> controlling interest.

9.      The members of the Class are so numerous that joinder of all members is

impracticable. From inception of the 1998 Plan until sometime in 2004, Caesars issued options

under the 1998 Plan to Caesars executives and employees. While the exact number of members

of the Class is unknown to Plaintiff at this time and can only be ascertained through appropriate

discovery, Plaintiff believes that there are hundreds of members in the proposed Class. Caesars'

option holders under the 1998 Plan may be identified from records maintained by HET and may

be notified of the pendency of this action by mail, using the form of notice similar to that

customarily used in class actions.

10.     Plaintiff's claims are typical of the claims of the members of the Class as all

members of the Class are similarly affected by HET's wrongful refusal to pay Class members the

price for their options to which they were entitled.

11.     Lead Plaintiff will fairly and adequately protect the interests of the members of

the Class and has retained counsel competent and experienced in class action litigation.

4

12.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

       (a)      Whether HET violated the terms of the 1998 Plan as alleged herein;

       (b)      Whether HET failed to pay option holders the highest share price paid for Caesars' common stock in connection with the Merger  pursuant to the terms of the 1998 Plan; and

       (c)      To what extent the members of the Class have sustained damages and the proper measure of damages.

13.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

14.     This action should be maintained as a class action because the prosecution of separate actions by individual members of the class would create a risk of inconsistent adjudications with respect to individual members of the class that would establish incompatible standards of conduct for the defendant.

15.     This action should be maintained as a class action because the prosecution of separate actions by individual members of the class would create a risk of adjudications with respect to individual members of the class that would be dispositive of the interests of other

5

018595.00603/21427436v.4

members of the class not parties to the adjudication.

16.    This action should be maintained as a class action because the defendant has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief with respect to the class as a whole.

## SUBSTANTIVE ALLEGATIONS

### A.    The Merger Between Caesars and HET.

17.    On July 14, 2004, Caesars entered into to the Merger Agreement with HET and Harrah's Operating Company.

18.    On March 11, 2005, Caesars' stockholders voted in favor of the Merger Agreement. Subsequently, on June 13, 2005, pursuant to the Merger Agreement, Caesars merged with and into Harrah's Operating Company, a wholly owned subsidiary of HET. As of June 13, 2005, HET stock traded at $73.17.

19.    Pursuant to the Merger Agreement, each holder of Caesar' common stock had the right to elect to receive either (a) $17.75 in cash, or (b) up to 0.3247 of a share of HET common stock for each share of Caesars' common stock (the "*Exchange Ratio*"), subject to the proration schedule contained in Section 2.01(e) of the Merger Agreement. The Exchange Ratio was subject to proration based on the percent of holders of Caesars' common stock electing to exchange Caesars' common stock for shares of HET stock in the Merger. The proration schedule of the Merger Agreement provided that the Exchange Ratio would be reduced if in excess of 66.42% of Caesars' stockholders elected to receive HET common stock instead of cash.

20.    Ultimately, 97.53% of the holders of Caesars' common stock elected to receive HET common stock in the Merger. As a result, based on the Merger Agreement's proration

6

schedule, holders of Caesars' common stock electing to exchange Caesars' common stock for shares of HET received 0.2212 shares of HET common stock plus $5.66 in cash for each share of Caesars' common stock exchanged in the Merger. On the closing date of the Merger, each share of Caesars' common stock received HET shares having a value of $16.18 (based upon the $73.17 market value of HET shares multiplied by 0.2212) plus $5.66, or a total consideration of $21.85.

21.    Pursuant to Section 2.04(c) of the Merger Agreement, each restricted stock unit ("*RSU*"), which were convertible into shares of Caesars' stock, granted under the Caesars' 2004 Long-Term Incentive Plan for directors, officers, and employees (the "*2004 Plan*"), and outstanding immediately prior to the Merger, was vested and received a number of shares of HET common stock (net of any applicable withholding) which equaled $23.76 per unit (based on the market value of shares of HET common stock on the date of the Merger). The higher payment to the holders of restricted stock units was due to Section 2.04(c) of the Merger Agreement, which specifically exempted holders of RSUs from the Merger Agreement's proration schedule applicable to holders of Caesars' common stock contained in Section 2.01(e) of the Merger Agreement.

**B.     The 1998 Stock Incentive Plan.**

22.    In 1998, Caesars' predecessor, Park Place Entertainment Corp., adopted the 1998 Plan, which was amended in part as of May 11, 2001. Park Place Entertainment Corp. subsequently changed its name to Caesars' Entertainment, Inc. The 1998 Plan was designed to compensate Caesars' officers and employees through the award of stock options. Stock options issued pursuant to the 1998 Plan were subject to the terms and conditions of the 1998 Plan.

23.    The 1998 Plan reserved and made available 55,000,000 shares of Caesars' common stock to be granted pursuant to the terms of the 1998 Plan. Full-time officers and

7

018595.00603/21427436v.4

employees of Caesars who were responsible for or contributed to the management, growth and profitability of Caesars, its subsidiaries and affiliates were eligible to receive awards under the 1998 Plan. Lead Plaintiff, as well as members of the Class who were Caesars' officers and employees or were otherwise eligible for awards under the 1998 Plan, received numerous options to purchase Caesars' stock pursuant to the 1998 Plan. At the time of the Merger, Lead Plaintiff held options to purchase 2,150,000 shares of Caesars' common stock pursuant to the 1998 Plan.

24.     The 1998 Plan included a "Change in Control Cash-Out" provision that provided each option holder the right, during the 60-day period following a "change in control," to elect to surrender each option in exchange for a cash payment in an amount not less than the "Change in Control Price" as defined by the 1998 Plan.

25.     The 1998 Plan specifies that, where a "change in control" is the result of a "corporate transaction," the "Change in Control Price" is *the highest price per share of Common Stock paid in such... Corporation Transaction.*" (emphasis supplied) The 1998 Plan defined a Corporate Transaction as "[t]he approval by the stockholders of the corporation of a reorganization, merger or consolidation or sale or other disposition of all or substantially all of the assets of the Corporation...."

26.     Outstanding 1998 Plan options became vested and exercisable upon shareholder approval of the Merger Agreement of March 11, 2005. Thus, following stockholder approval of the Merger Agreement, option holders under the 1998 Plan were entitled to receive the highest price per share of Caesars' common stock paid in connection with the Merger, namely the $23.76 paid to holders of RSUs granted under the 2004 Plan.

8

## C.   HET Refuses To Pay Caesars' Option Holders Under The 1998 Plan The Highest Price Per Share of Caesars' Common Stock Paid In Connection With The Merger.

27.   Pursuant to the Merger Agreement, HET assumed all exercised or unexercised options to purchase Caesars' common stock granted under the 1998 Plan upon closing of the Merger.

28.   On March 14, 2005, option holders under the 1998 Plan received an initial $20.89 payment for each option to purchase a share of Caesars' common stock.

29.   On June 24, 2005, following consummation of the Merger, option holders received a top-off payment that was supposed to result in a payment equivalent to the "change in control price" as defined by the 1998 Plan.

30.   Option holders under the 1998 Plan received an additional $0.96 per share based on the Merger's final 0.2212 exchange ratio. In total, option holders received a cash out price of $21.85 for options held pursuant to the 1998 Plan.

31.   Under the 2004 Plan, holders of restricted stock units were permitted to receive Caesars' common stock for cash upon the vesting of their restricted stock units and became vested upon a change in control as defined in Section 2(d)(iii) and Section 7 of the 2004 Plan. Section 2.04(c) of the Merger Agreement specifically provided that the RSUs granted under the 2004 Plan would vest on the date of the Merger. As required by the Merger Agreement, the number of shares of HET common stock paid to holders of RSUs granted under the 2004 Plan was calculated based on the Exchange Ratio, without regard to the proration schedule contained in Section 2.01(e) in the Merger Agreement. Thus, the number of shares of HET common stock paid to holders of RSUs issued under the 2004 Plan was calculated based on the original 0.3427

9

018595.00603/21427436v.4

Exchange Ratio (without regard to proration), not the 0.2212 Exchange Ratio used to calculate the price paid to option holders under the 1998 Plan.

32.     As a result, holders of restricted stock units granted under Caesars' 2004 Plan were paid shares of HET common stock having a value on the date of the Merger of $23.76 for each share of Caesars' common stock into which each RSU was convertible. Accordingly, holders of RSUs granted under the 2004 Plan received $1.91 more per share ($23.76 less $21.85) in connection with the Merger than option holders under the 1998 Plan. *Thus, option holders under the 1998 Plan did not receive the "highest price per share" of Caesars' common stock paid in connection with the Merger, as required by the 1998 Plan.*

33.     Mr. Barr contacted HET in June 2005 to report HET's failure to comply with the definition of the change-in-control price under the 1998 Plan. Despite Mr. Barr's efforts, HET refused to comply with the terms of the 1998 Plan and insisted that Mr. Barr only was entitled to receive the consideration paid to holders of Caesars' common stock, thereby ignoring the specific provisions in the 1998 Plan that entitled option holders under the 1998 Plan to receive the "highest price per share" paid in connection with the Merger, not just the price paid to holders of Caesars' common stock.

## COUNT I

### Breach of Contract

34.     Lead Plaintiff re-alleges and incorporates by reference herein the allegations set forth in paragraphs 1 through 33 above as if fully set forth herein.

35.     Officers and employees of Caesars who held options pursuant to the 1998 Plan were entitled to receive "the highest price per share of Common Stock paid in" in the Merger.

10

36.     Following consummation of the Merger between Caesars and HET, option holders under the 1998 Plan did not receive the highest price per share of Common Stock paid in the merger.

37.     HET assumed Caesars' obligations under the 1998 Plan pursuant to the Merger Agreement. Nevertheless, HET failed to comply with its obligations to pay option holders under the 1998 Plan the highest price paid for Caesars' common stock in the Merger.

38.     HET paid holders of RSUs approximately $1.91 per share more than that paid to option holders under the 1998 Plan.

39.     By the foregoing conduct, HET has breached the terms of the 1998 Plan.

40.     Lead Plaintiff, and other members of the Class, have been damaged as a direct and proximate result of HET's breach of contract.

## COUNT II

### Specific Performance

41.     Lead Plaintiff re-alleges and incorporates by reference herein the allegations set forth in paragraphs 1 through 40 above as if fully set forth herein.

42.     This claim charges HET with breach of contract and seeks specific performance.

43.     HET failed and refuses to comply with its obligations to pay option holders the change in control cash out price to which they are entitled pursuant to the terms of the 1998 Plan.

44.     Lead Plaintiff and other members of the Class are entitled to specific performance of the 1998 Plan to enforce HET's obligations to pay option holders under the 1998 Plan the highest price per share of Caesars' common stock paid in the Merger.

**WHEREFORE**, Lead Plaintiff, on behalf of himself and the Class, pray for judgment as follows:

A.   Declaring this action to be a proper class action maintainable pursuant to Rule 23 of the Federal Rules of Civil Procedure and Lead Plaintiff to be a proper class representative:

B.   Awarding Lead Plaintiff and the Class compensatory damages, together with appropriate pre-judgment and post-judgment interest at the maximum rate allowable by law;

C.   Awarding Lead Plaintiff and the Class preliminary and permanent injunctive relief enforcing the terms of the 1998 Plan;

D.   Awarding Lead Plaintiff and the Class their costs and expenses for this litigation, including reasonable attorneys' fees and other disbursements; and

E.   Granting such other and further relief as this Court deems to be just and proper.

12

## DEMAND FOR TRIAL BY JURY

Plaintiff demands trial by jury on all issues so triable.

Dated: October 21, 2005

STEPHEN M. ORLOFSKY, ESQUIRE (SMO 6932)
New Jersey Resident Partner
BLANK ROME LLP
A Pennsylvania LLP
J. LLEWELLYN MATHEWS, ESQUIRE (JLM-8508)
Woodland Falls Corporate Park
210 Lake Drive East, Suite 200
Cherry Hill, New Jersey 08002
(856) 779-3600

*Of Counsel*
BLANK ROME LLP
Timothy D. Katsiff, Esquire
Brian J. McTear, Esquire
One Logan Square
130 N. 18th Street
Philadelphia, PA 19103

*Attorneys for Plaintiff*

13

## CERTIFICATIONS UNDER L. Civ. R. 11.2 AND 201.1(d)(3)

1.    I certify pursuant to L. Civ. R. 11.2 that the matter in controversy is not the

subject of any other action pending in any court, nor of any pending arbitration or administrative

proceeding.

2.    I further certify pursuant to L. Civ. R. 201.1(d)(3) that the damages claimed and

recoverable in the above-captioned matter exceed the sum of $150,000 exclusive of interest and

costs and any claim for punitive damages.


Dated:  October 21, 2005

                                         STEPHEN M. ORLOFSKY, ESQUIRE (SMO 6932)
                                         New Jersey Resident Partner
                                         BLANK ROME LLP
                                         A Pennsylvania LLP
                                         J. LLEWELLYN MATHEWS (JLM-8508)
                                         Woodland Falls Corporate Park
                                         210 Lake Drive East, Suite 200
                                         Cherry Hill, New Jersey 08002
                                         (856) 779-3600

                                         *Attorneys for Plaintiff*

14

018595.00603/21427436v.4